UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEFENDERS OF WILDLIFE,
*et al.*,

      Plaintiffs,

      v.

SUSAN MARTIN, *et al.*,

      Defendants

      v.

IDAHO STATE SNOWMOBILE
ASSOCIATION, *et al.*,

      Defendant-Intervenor-Cross
      Claimants.

NO.  CV-05-248-RHW

**ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT,
GRANTING DEFENDANTS'
CROSS-MOTION AND
PLAINTIFFS' MOTION FOR
INJUNCTIVE RELIEF**

Before the Court are Plaintiffs' Motion for Partial Summary Judgment (Ct. Rec. 36), Defendants' Cross-Motion for Partial Summary Judgment (Ct. Rec. 78), and Plaintiffs' Second Motion for Injunctive Relief (Ct. Rec. 105).  A hearing was held on September 7, 2006, in Spokane, Washington.  Lauren Rule, Michael Leahy, and Richard Eichstaedt appeared on behalf of Plaintiffs; Jimmy Rodriguez appeared on behalf of Defendants; and Paul Turcke and Mark Ellingsen appeared on behalf of Defendant-Intervenors.

## BACKGROUND

In their Complaint, Plaintiffs challenge two biological opinions issued by Defendants Martin and the U.S. Fish and Wildlife Service ("FWS" or "Service"),

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 1

and actions by Defendants McNair and U.S. Forest Service ("USFS"), in violation of the Endangered Species Act of 1973 ("ESA"), 16 U.S.C. §§ 1531 *et seq*.  The Complaint alleges Defendants are allowing the decline of the remaining woodland caribou in the continental United States by implementing National Forest Management actions on the Colville and Idaho Panhandle National Forests ("IPNF").

The Court granted Plaintiffs' First Motion for Preliminary Injunction by Order on December 20, 2005 (Ct. Rec. 65).  Plaintiffs' motion was narrow in scope, asking for an order enjoining Federal Defendants from implementing their Challenge Cost Share Agreement ("CCSA") for snowmobile trail grooming in certain areas of the Idaho Panhandle National Forest during the winter of 2005-2006.  The Court granted Plaintiffs' motion, finding that the CCSA was an agency action under § 7(a)(2) of the ESA which required consultation with the Fish and Wildlife Service before implementation.

Plaintiffs' second motion for injunctive relief asks the Court to issue an injunction to prohibit the Federal Defendants from authorizing snowmobiling or snowmobile trail grooming in the "Caribou Recovery Area" inside the IPNF until it has adequately *completed* consultation with the Fish and Wildlife Service over the effects of these activities on woodland caribou.  Plaintiffs' current motion for partial summary judgment lists four specific issues for the Court's consideration:

> (1) The amended [IPNF BiOp] issued by defendants Susan Martin and U.S. Fish and Wildlife Service is arbitrary, capricious, an abuse of discretion, and/or contrary to law, pursuant to the ESA and the Administrative Procedure Act ("APA");
> (2) The Incidental Take Statement within the IPNF BiOp is arbitrary, capricious, an abuse of discretion, and/or contrary to law, pursuant to the ESA and the APA;
> (3) Defendants have further violated the ESA by not reinitiating consultation over the IPNF BiOP, after the U.S. Forest Service failed to comply with the non-discretionary Terms and Conditions within the Incidental Take Statement; and/or
> (4) Defendants McNair and U.S. Forest Service have violated the ESA by failing to consult with U.S. Fish and Wildlife Service over their [CCSA] for snowmobile trail grooming on the IPNF, and by

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 2

1   failing to ensure that the [CCSA] will not jeopardize the continued
2   existence of the woodland caribou.

(Ct. Rec. 36, Pls.' Mot. Partial Summ. J., at 3).  Defendants' cross-motion for partial summary judgment exactly mirrors Plaintiffs' motion, raising the same issues for judgment in their favor.

**FACTS**

Defendants and Intervenors submit the Court is limited to reviewing the administrative record for the pending motions.  Plaintiffs assert otherwise because they are basing their motion for injunctive relief on ongoing violations of the substantive provisions of §§ 7(a)(2) and 9.  As discussed below, the ESA contains a citizen suit provision that independently authorizes a private right of action to challenge its violations.  16 U.S.C. § 1540(g)(1).  The Court finds Plaintiffs' motion for injunctive relief is pursuant to this provision and therefore considers all evidence submitted for review in support of that motion.  The following findings incorporate both the administrative records and the declarations and other evidence supporting and opposing Plaintiffs' motion for injunctive relief.

**I.    Snowmobiling and its Effects on the Woodland Caribou**

The Selkirk Mountains woodland caribou is listed as "endangered" under the ESA.  50 C.F.R. § 17.11.  At the time of listing in the early 1980s, the woodland caribou's population in the United States was reduced to only 25-30 animals.  (Fish & Wildlife Service Admin. R., at 00019 (hereinafter "FWS AR")).  Since 1987, 103 caribou have been transplanted into the region from other populations in British Columbia to bolster numbers and help stabilize the population.  (*Id*.).  Nevertheless, its remaining population numbers only about 35 animals; most of the population is located in southern British Columbia and a few are found in northern Idaho and Washington.  (*Id*. at 00019).  In its 2001 Amended Biological Opinion, the Service recognized that this population "is considered to be in decline and in danger of extirpation."  (*Id*.).  Only a few caribou are likely to be found anywhere

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 3

1   south of the Canadian border - - the Idaho Fish and Game Department has found
2   one to three caribou in several different areas of the Selkirk Mountains during
3   surveys of northern Idaho over the last five years.  (Forest Service Admin. R.
4   D220, at 2 (hereinafter "USFS AR")).

5       The late winter habitat of the woodland caribou consists generally of high
6   elevation areas, where they walk on top of the snow and feed on nutrient-poor
7   lichen found above the snowline on mature and old-growth trees.  (FWS AR, at
8   00018).  There are groomed trails and snowmobile "play areas" throughout the
9   Selkirk Mountains, including areas close to and in caribou habitat.  (*Id*. at 00021).
10  In its IPNF 2001 Amended Biological Opinion ("BiOp"), the Service states
11  "[m]uch of the late winter habitat available for caribou is being increasingly
12  impacted by winter recreational activities (i.e. snowmobile activity). . . .  As the
13  remaining suitable late winter habitat is increasingly infringed upon by winter
14  recreationists, the potential increases for caribou harassment and possible injury, as
15  well as displacement from these key habitats."  (*Id*. (citation omitted)).

16      Although no critical habitat has been designated for the population of
17  woodland caribou, a caribou recovery plan was developed in 1985 and revised in
18  1994.  (*Id*. at 00017).  The recovery area outlined in the plan encompasses
19  approximately 2200 square miles in the Selkirk Mountains of northern Idaho,
20  northeastern Washington, and southern British Columbia.  (*Id*.).  About 53 percent
21  of the recovery area is within the United States, and about 57 percent (175,000
22  acres) of this area is within the IPNF.  (*Id*. at 00017, 00049).  As a result of the
23  1994 revision of the Caribou Recovery Plan, USFS closed a 25-square-mile area of
24  the IPNF including the Selkirk Crest to snowmobile access to assist in caribou
25  recovery.  (*Id*. at 00057; USFS AR D220, at 2).

26      Approximately 77,000 acres within the caribou recovery area are currently
27  used by winter recreationists, including snowmobilers.  (USFS AR D220, at 2).

28
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 4

1   There are about 50 miles of groomed snowmobile routes mapped and permitted on

2   national forest lands within the recovery area. (*Id*.). Although the actual area used

3   by snowmobiles varies depending on snowfall and snow conditions, aerial

4   monitoring over the past several years has shown an increasing level of use within

5   areas such as open canopied timbered habitats. (*Id*.). The Forest Service reports

6   this type of use was rare in the past. (*Id*.). This use appears to directly overlap the

7   late winter caribou habitat described in the 2001 IPNF Amended BiOp—"mature

8   and old growth spruce-subalpine fir forests and parkland." (FWS AR, at 00018).

9       One study has recommended that snowmobiling be restricted from high

10  quality mountain caribou winter habitat or at least limited to a small proportion of

11  the total high quality habitat for each herd. (Ct. Rec. 107, Rule Decl., Ex. 4, at 24).

12  Additionally, the Forest Service observed snowmobiling activity that conflicted

13  with affected caribou in or near the IPNF in the recent past: in an email, a Forest

14  Service Wildlife Biologist referred to a sighting of two caribou that were

15  "bumped" out of the Abandon Creek area in March 2004 by snowmobiles in the

16  area. (*Id*. at 6).

17      Keith Simpson, an expert on woodland caribou and the author of studies

18  cited by the Forest Service and the FWS, states that "protecting caribou travel

19  routes between southern areas and northern areas is critical to maintain the genetic

20  linkage within the population. Small populations are vulnerable to inbreeding and

21  loss of fitness if members of the population become isolated and cannot

22  interbreed." (Ct. Rec. 108, 2d Simpson Decl., ¶ 3). Simpson notes that the USFS's

23  current snowmobile plans allow for snowmobile use that will block movement

24  between high quality habitat on the Selkirk Crest in Idaho and habitat in Canada.

25  (*Id*. ¶ 7). He concludes that the measures currently in place "will harm individual

26  caribou that may be displaced from [ ] habitat; and will not insure the survival of

27  the population due to the failure to provide for movement between the southern

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 5

1  and northern portions of this population's range, cutting off access to prime habitat

2  and critical genetic linkage."  (*Id*. ¶ 12).

3       Another wildlife and caribou expert, Jon Almack, has documented occasions

4  when snowmobiling activity has displaced woodland caribou.  (Ct. Rec. 109,

5  Almack Decl., ¶¶ 10-12).  He concludes that "[b]y authorizing continued

6  snowmobile use throughout a large portion of the caribou Recovery Zone, the

7  Forest Service is injuring caribou that are disturbed by these machines or precluded

8  from using available habitat, impairing their breeding, feeding, and sheltering

9  behaviors.  This activity is also jeopardizing the continued survival of the entire

10 South Selkirk mountain caribou population by reducing the reproduction, numbers,

11 and distribution of the species."  (*Id*. ¶ 44).

12 **II.    Fish & Wildlife Service's 2001 Amended Biological Opinion**

13      The Service's 2001 Amended BiOp for the IPNF approved the 1987

14 Panhandle National Forest Plan, concluding the continued implementation of the

15 Plan "is not likely to jeopardize the continued existence of the Selkirk Mountain

16 woodland caribou."  (FWS AR, at 00061).  Regardless of this determination, the

17 FWS issued an Incidental Take Statement, which permits limited take "provided

18 that such taking is in compliance with this Incidental Take Statement."  (*Id*. at

19 00062).  The Incidental Take Statement's terms and conditions for woodland

20 caribou include a non-discretionary requirement that the USFS by January 2004

21 "develop and implement a comprehensive recreation strategy which identifies

22 specific standards and restrictions necessary to protect caribou and their habitat on

23 the IPNF."  (*Id*. at 00072).

24      USFS has neither developed nor implemented such a strategy.  The Service

25 found a strategy was necessary because

26      [w]inter recreation, particularly snowmobiling, is quickly becoming a
        significant threat to caribou, both through direct harassment and
27      indirectly by potentially precluding caribou use of historic habitats and
        travel corridors.  Snowmobile activity continues to rapidly expand
28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 6

> throughout caribou habitat, and the existing standards are not specific enough to clearly address this growing problem. Protection of suitable habitat and travel corridors is essential to ensure that caribou have unrestricted access to available habitat.

(*Id*. at 00057). Assuming USFS had timely developed and implemented a compliant strategy, the Incidental Take Statement still cautions that

> the Service is not able to issue a 'blanket' incidental take statement with a comprehensive list of reasonable and prudent measures to sufficiently cover all programs and actions subsequently implemented pursuant to the Forest Plan. Individual actions that may result in take of woodland caribou will be subject to future site-specific consultation.

(*Id*. at 00063-64)).

## III.    Reinitiation of Consultation

On March 3, 2006, the IPNF formally reinitiated consultation under § 7 of the ESA regarding the effects on woodland caribou of winter recreation activities. (Ct. Rec. 80, McNair Decl., Ex. B). The purpose of the consultation is to consider a comprehensive winter recreation strategy, just as the 2001 Amended BiOp's Incidental Take Statement dictated. (*Id*.). One of the consequences of the reinitiation of consultation is the 2001 Amended BiOp is no longer considered valid with respect to winter recreation activities. (*Id*.). Accordingly, the provisions of the ESA § 7(d)[1] will apply to winter recreation activities while consultation is

---

[1] Section 7(d) of the ESA states:

> After initiation of consultation required under subsection (a)(2), the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of this section.

16 U.S.C. § 1536(d). Section 7(d) was enacted "to ensure that the status quo would be maintained during the consultation process, to prevent agencies from sinking resources into a project in order to ensure its completion regardless of its impacts on endangered species." *Wash. Toxics Coalition v. EPA*, 413 F.3d 1024,

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 7

ongoing.  (*Id.*, Exs. A & B).  Defendants estimate the consultation process should take approximately two years to complete.  (USFS AR D219).

The Forest Service determined it would be in compliance with § 7(d) until consultation was complete using three criteria: habitat quality, caribou presence, and proximity of winter recreation activities to the previous two.  (USFS AR D220, at 4).  The final § 7(d) determination includes four basic areas of action: (1) continuing grooming all previously groomed routes except for three areas;[2] (2) maintaining closures of all existing areas that are currently closed to motorized winter recreation; (3) implementing a new closure area in the Continental Mountain-Grass Mountain-Saddle Mountain Area; and (4) continuing implementation of strategy elements including information and education, enforcement of existing management direction, monitoring motorized winter recreation use, and developing a winter recreation strategy.  (*Id.* at 6).  The Forest Service maintains this plan will not result in any irreversible or irretrievable commitment of resources or foreclose any reasonable and prudent alternatives in regard to caribou on the IPNF.  (*Id.* at 7).

### STANDARD OF REVIEW: INJUNCTIVE RELIEF

The usual standard for granting a preliminary injunction "balances the

_____

1034-35 (9th Cir. 2005).

[2]  The three areas where trail grooming is to be discontinued are the Hemlock Loop outer route, the Smith Creek route on Road 281, and the Pack River Route.  (USFS AR D220, at 5).  These areas were found to be located where caribou have been documented either by telemetry, census, or observations since the year 2000.  (*Id.*).  USFS determined that the remaining routes do not provide ready access for potential predators to travel into high elevation areas where caribou have been located, and that there is a lack of high quality habitats and a general absence of caribou from those areas.  (*Id.*).

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 8

1   plaintiff's likelihood of success against the relative hardship to the parties." *Clear*

2   *Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

3   To obtain a preliminary injunction, Plaintiffs must demonstrate "either (1) a

4   likelihood of success on the merits and the possibility of irreparable injury; or (2)

5   that serious questions going to the merits were raised and the balance of hardships

6   tips sharply in [their] favor . . . ." *Id*. These standards are not separate tests; rather

7   they are along the same continuum. *Id*. Therefore, the greater the relative hardship

8   to the party seeking the injunction, the less probability of success must be shown.

9   *Id*.

10         By enacting the ESA, Congress altered the normal standards for injunctions

11   under Federal Rule of Civil Procedure 65.  The Ninth Circuit has consistently held

12   that "[t]he traditional preliminary injunction analysis does not apply to injunctions

13   issued pursuant to the ESA." *Nat'l Wildlife Fed'n v. NMFS*, 422 F.3d 782, 793

14   (9th Cir. 2005).  The Supreme Court stated that in enacting the ESA "Congress has

15   spoken in the plainest of words, making it abundantly clear that the balance has

16   been struck in favor of affording endangered species the highest of priorities."

17   *TVA v. Hill*, 437 U.S. 153, 194 (1978).  "Accordingly, courts may not use equity's

18   scales to strike a different balance." *Nat'l Wildlife Fed'n*, 422 F.3d at 794 (internal

19   quotation omitted).

20         The standards of review for injunctions under the ESA vary somewhat

21   according to what type of violation is alleged: procedural or substantive.  "The

22   remedy for a substantial *procedural* violation of the ESA—a violation that is not

23   technical or *de minimus—must* therefore be an injunction of the project pending

24   compliance with the ESA." *Wash. Toxics Coalition*, 413 F.3d at 1034 (upholding

25   an injunction prohibiting the EPA from authorizing the use of certain pesticides

26   within proscribed distances of salmon-bearing waters until it had fulfilled its

27   consultation obligations under § 7(a)(2) of the ESA) (emphases added).

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 9

Here, Plaintiffs are alleging a substantive violation of the ESA rather than a procedural violation. To show they are entitled to a preliminary injunction due to a substantive violation of the ESA, Plaintiffs must "make a showing that a violation of the ESA is at least likely in the future." *Nat'l Wildlife Fed'n v. Burlington N.R.R., Inc.*, 23 F.3d 1508, 1511 (9th Cir. 1994) ("*Burlington N.R.R.*"). What is required is "a definitive threat of future harm to protected species, not mere speculation." *Id*. at 1512 n.8. The Ninth Circuit has pointed out that "courts are not mechanically obligated to grant an injunction for every violation of law[,]" while at the same time noting that "[p]ast takings are [ ] instructive, especially if there is evidence that future similar takings are likely." *Id*. at 1512 (citing *TVA*, 437 U.S. at 173; affirming district court's finding that future similar takings were not likely in that case). Plaintiffs urge the Court to take particular care considering the circumstances of the woodland caribou, emphasizing that temporary harms during the consultation process could lead to the permanent harm of extinction. *See Defenders of Wildlife v. EPA*, 420 F.3d 946, 978 (9th Cir. 2005) (discussing potential harms to pygmy owls, which records suggest numbers less than 100 in area under consideration).

## DISCUSSION: INJUNCTIVE RELIEF

Plaintiffs move the Court pursuant to Federal Rule of Civil Procedure 65 and the ESA to prohibit Federal Defendants from authorizing snowmobiling or snowmobile trail grooming in the Caribou Recovery Area until it has adequately completed consultation with the FWS over the effects of these activities on woodland caribou. Plaintiffs submit that Defendants are violating §§ 7 and 9 of the ESA by continuing to authorize these motorized winter recreation activities without any biological opinion or incidental take statement covering them. Plaintiffs allege the continuing authorization constitutes both "jeopardy" and "take" of woodland caribou.

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 10

1   **I.      Scope of Review**

2          Plaintiffs insist they are not challenging Defendants' § 7(d) determination;

3   instead, they are basing their motion for injunctive relief on ongoing violations of

4   the substantive provisions of §§ 7(a)(2) and 9.  Because they do not challenge the

5   USFS's determination, the Court shall not conduct a review of the determination

6   and record pursuant to the APA.  As this is a pure ESA claim, the APA's arbitrary

7   and capricious standard of review and its limitations to the administrative record do

8   not apply.  Intervenors and Defendants argue the Court is limited to considering

9   the administrative record in determining whether Federal Defendants are acting in

10  violation of the ESA.  5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973)

11  ("In applying [the APA], the focal point for judicial review should be the

12  administrative record already in existence, not some new record made initially in

13  the reviewing court.").  However, in *Washington Toxics Coalition*, the Ninth

14  Circuit found it appropriate for the district court to consider materials outside the

15  administrative record because the ESA independently authorizes a private right of

16  action to challenge its violations.  413 F.3d at 1029, 1034; 16 U.S.C. § 1540(g)(1).

17  Plaintiffs' claim is under the citizen suit provision of the ESA; therefore, the Court

18  shall consider evidence outside the administrative record.

19  **II.     Sections 7 and 9 of the ESA**

20         Section 7(a)(2) of the ESA imposes a substantive duty in addition to its

21  procedural consultation requirement discussed above.  *Defenders of Wildlife v.*

22  *EPA*, 420 F.3d at 950, 957.  Federal agencies must "'insure' that [agency] actions

23  are 'not likely to jeopardize the continued existence of any endangered species or

24  threatened species or result in the destruction or adverse modification of [critical]

25  habitat of such species.'" *Id*. at 950-51 (quoting 16 U.S.C. § 1536(a)(2)).  Section 7

26  therefore "includes an affirmative grant of authority to attend to protection of listed

27  species within agencies' authority when they take actions covered by section

28  ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
    JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
    PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 11

7(a)(2)." *Id*. at 965. This grant of authority has been characterized as a "do-no-harm obligation" on agencies when their own actions could cause harm to an endangered species. *Id*. When consultation occurs, agencies must still operate "under the assumption that all of section 7(a)(2)'s substantive requirements apply to the action agency." *Id*. at 966. The issuance of the § 7(d) determination in this matter qualifies as an affirmative "agency action" under § 7(a)(2). *See* 50 C.F.R. § 402.02 (defining "action" to mean "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies" including, but not limited to "actions intended to conserve listed species or their habitat;" . . . [or] "the granting of license, contracts, leases, easements, rights-of-way, permits, or grants-in-aid"); *Defenders of Wildlife v. EPA*, 420 F.3d at 967 (emphasizing that § 7(a)(2) consultation duties stem from "affirmative" actions).

Section 9 of the ESA makes it a crime to "take" any species listed as endangered. 16 U.S.C. § 1538(a)(1)(B). The term "take" is defined broadly to mean "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The term "harm" as used in the ESA includes any "significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3. This definition includes "significant . . . modification or degradation" of a listed species' habitat. *See Babbitt v. Sweet Home Chapter of Cmties. for a Great Or.*, 515 U.S. 687, 691, 708 (1995) (upholding definition of "harm" in 50 C.F.R. § 17.3). The term "harass" in the definition of "take" means "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3. The anti-take provisions of § 9 apply to all actors, not just the federal

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 12

government.  *Defenders of Wildlife v. EPA*, 420 F.3d at 975.  However, § 9 does not provide coverage for endangered and threatened species that is as broad as that provided in § 7 because "the Government cannot enforce the § 9 prohibition until an animal has actually been killed or injured."  *Sweet Home*, 515 U.S. at 703.  This "after-the-fact enforcement" does not prevent threats to listed species; that task is accomplished through § 7.  *Defenders of Wildlife v. EPA*, 420 F.3d at 975.

**III.    Section 7(d) and Injunctive Relief Pending Completion of Consultation**

As described above, the Forest Service and FWS have reinitiated consultation in accordance with § 7(a)(2) of the ESA.  While consultation is ongoing, § 7(d) of the ESA provides additional guidance regarding the activities the Forest Service may permit.  Section 7(d) of the ESA states:

> After initiation of consultation required under subsection (a)(2), the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of this section.

16 U.S.C. § 1536(d).  This section was "enacted to ensure that the status quo would be maintained during the consultation process, to prevent agencies from sinking resources into a project in order to ensure its completion regardless of its impacts on endangered species."  *Wash. Toxics Coalition*, 413 F.3d at 1034-35.  Section 7(d) does not replace the requirements found in § 7(a)(2); rather, it "clarifies" those requirements.  *Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1056 n.14 (9th Cir. 1994) (citation omitted).

In its § 7(d) determination, the Forest Service has decided to continue to allow snowmobiling and snowmobile trail grooming in most areas in which it was allowed previously, with a few exceptions.  *See supra*, n.2.  The Forest Service is relying on its § 7(d) determination to justify this decision.  (Admin. Rec. D220). Plaintiffs assert Defendants are violating the ESA because they do not have a valid biological opinion or incidental take statement, and therefore they cannot "insure"

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 13

1  that their actions "are not likely to jeopardize" the continued existence of the

2  woodland caribou or avoid unlawful "take" of the woodland caribou, regardless of

3  Defendants' issuance of and reliance upon their § 7(d) determination.

4  Consequently, Plaintiffs request an injunction closing the entire Selkirk Caribou

5  Recovery Area to snowmobiling and trail grooming until Defendants have

6  developed a new lawful winter recreation plan and completed ESA consultation.

7  Plaintiffs state the content of Forest Service's § 7(d) determination is not

8  necessarily relevant to their claims that Defendants are violating §§ 7 and 9 of the

9  ESA.

10      Even though Plaintiffs are not challenging Defendants' § 7(d) determination,

11  the Court must consider the propriety of enjoining activities while § 7(d) is in

12  effect, *i.e.* after the initiation but pending the completion of § 7(a)(2) consultation.

13  In *Sierra Club v. Marsh*, the Ninth Circuit agreed with the plaintiff that an

14  injunction was appropriate pending the reinitiation of consultation.  816 F.2d 1376,

15  1389 (9th Cir. 1987).  The court explained that "Congress intended that the

16  consultation process would operate so as to prevent substantive violations of the

17  act."  *Id*.  The court then enjoined agency action, but limited its injunction in the

18  following way: all work on the agency project was enjoined "unless the

19  [defendant] reinitiates consultation within thirty days of the issuance of the

20  mandate in this appeal, with the injunction continuing until such time as

21  consultation is reinitiated.  When consultation is reinitiated, the statutory

22  prohibition of section 7(d) will apply."  *Id*.  This wording could be read to imply

23  that § 7(d) provides its own governing rules during the consultation process that

24  cannot be affected by court order.

25      Since this holding, however, the Ninth Circuit has commented on its

26  application in cases where consultation has already been initiated.  In an opinion

27  that was later withdrawn, the court stated that the *Marsh* holding "supports a

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 14

1  conclusion that *non-jeopardizing* agency action may take place during the

2  consultation process in light of the protections of Section 7(d) where the action will

3  not result in substantive violations of the act." *Southwest Ctr. for Biological*

4  *Diversity v. USFS*, 307 F.3d 964, 974 (9th Cir. 2002), *vacated as moot*, 355 F.3d

5  1203 (9th Cir. 2004) (emphasis in original).

6        Judge Canby's dissenting opinion in that case interprets the *Marsh* language

7  further.  Judge Canby elaborates on the majority's reference to *Marsh* and the

8  effect of § 7(d) on pending motions for injunctive relief.  He explains that "[o]ne

9  interpretation of [the *Marsh*] language would be that section 7(a)(2) ceases to have

10 force (at least to support an injunction) once consultation begins, and the only

11 environmental protection thereafter must come from section 7(d)."  *Id*. at 976

12 (Canby, J. dissenting).  However, Judge Canby declined to interpret *Marsh* or §

13 7(d) that way, and explained that the majority likewise declined to do so.  He stated

14 that "[s]ection 7(d) certainly supplements section 7(a)(2) once consultation begins,

15 but it does not, in my view, weaken the requirement of section 7(a)(2) that

16 consultation be completed before action is taken."  *Id*. at 977 (Canby, J.

17 dissenting).  Judge Canby clarified that his point "is simply that the availability of

18 section 7(d) is no reason to hold that an injunction to enforce section 7(a)(2) should

19 not be kept in force until consultation is completed."  *Id*.  This reasoning remains

20 persuasive in spite of the opinion's later withdrawal.

21       Section 7(d) also came under scrutiny in *Wash. Toxics Coalition v. EPA*, 413

22 F.3d at 1034-35.  In that case, the intervenors challenged the scope of injunctive

23 relief requested and awarded.  The Ninth Circuit stated that it is "well-settled that a

24 court can enjoin agency action pending *completion* of section 7(a)(2)

25 requirements."  *Id*. at 1034 (emphasis added).  Finding that the "very maintenance

26 of the 'status quo' . . . is alleged to be harming the endangered species[,]" the court

27 held that an order enjoining all activities that potentially violate the ESA may be

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 15

appropriate during the consultation process. *Id*. at 1034-35.  Additionally, the court held the burden of establishing that an action is non-jeopardizing pending the completion of consultation is on the agency. *Id*. at 1035.  "Placing the burden on the acting agency to prove the action is non-jeopardizing is consistent with the purpose of the ESA and what we have termed its 'institutionalized caution mandate[ ].'" *Id*.  Accordingly, it is Federal Defendants' burden to prove that continuing to permit snowmobiling within the caribou recovery area is non-jeopardizing to the species.

## IV.   Agency Action

Defendants argue that § 7 does not apply to their ongoing discretion to control or limit snowmobiling and associated trail grooming within the IPNF pursuant to the original 1986 BiOp and, alternatively, that Plaintiffs' current claims regarding the IPNF BiOp are moot.  Defendants assert that consequently the Court cannot issue an injunction pursuant to § 7.  In support of their position that there is no live § 7 claim, Defendants cite to a recent Ninth Circuit case, *Western Watersheds Project v. Matejko*, 456 F.3d 922 (9th Cir. 2006).  That case involved a plaintiff's attempt to get an agency to initiate consultation. *Id*. at 925.  The court found that an agency's failure to exercise discretion is not an "agency action" for purposes of § 7(a)(2) of the ESA, and therefore does not require consultation. *Id*. at 930.  Here, the facts are readily distinguishable: Defendants have already reinitiated consultation, and they have performed an "affirmative" agency action in preparing and releasing their § 7(d) determination.  Therefore, the Ninth Circuit's holding in *Matejko* is not relevant here.  Defendants' issuance of their § 7(d) determination qualifies as an agency action under § 7(a)(2).

Plaintiffs in this motion submit the Forest Service is violating its ongoing substantive duties under §§ 7 and 9 of the ESA.  Defendants aver this claim is not stated in Plaintiffs' Complaint.  However, Plaintiffs' Complaint clearly includes

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 16

claims under both §§ 7 and 9 of the ESA that allege substantive violations of the Act. Furthermore, Defendants argue that Plaintiffs cannot assert a claim that simply requests the Forest Service to do more to protect caribou, stating that § 7 applies only to affirmative acts. As stated above, the Court finds the issuance of the § 7(d) determination was an "affirmative" agency action, *see* 50 C.F.R. § 402.02 (defining "action" under the ESA); and that Defendants continue to have an affirmative duty to "insure" that such action "is not likely to jeopardize the continued existence" of the woodland caribou. Because there was an agency action, and in accordance with Ninth Circuit case law, the Court finds it has the authority to issue an injunction after reinitiation of consultation to prohibit activities that potentially violate the ESA during the consultation process as alleged in this case. *See Wash. Toxics Coalition*, 413 F.3d at 1034-35.

### III. Merits of Plaintiffs' Request for Injunctive Relief

As described above, Plaintiffs ask the Court to prohibit Defendants' authorization of snowmobiling and trail grooming within the caribou recovery area inside the IPNF because it "jeopardizes" and "takes" the endangered woodland caribou. Section 7(d) does not authorize the Forest Service to proceed with actions that violate the ESA pending consultation—the duties and responsibilities of §§ 7(a)(2) and 9 continue to apply to USFS actions.

Therefore, the Court must determine whether Plaintiffs have made a showing that a violation of the ESA is at least likely in the future. *Burlington N.R.R.*, 23 F.3d at 1511. If so, the Court must enjoin the activity in light of the fact that the "'balance of hardships and the public interest should tip heavily in favor of endangered species.'" *Id*. at 1511 n.4 (quoting *Marsh*, 816 F.2d at 1383). When considering the possibility of a violation, evidence of past takings is instructive to the Court, particularly if there is evidence that future similar takings are likely. *Id*. at 1512. The Court also takes into account the administrative record of both the

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 17

1   USFS's § 7(d) determination and the FWS's 2001 IPNF Amended BiOp, along

2   with the unchallenged declarations of Plaintiffs' experts discussing the effects of

3   snowmobiling on woodland caribou.

4        The FWS remarks in the 2001 Amended BiOp that snowmobiling is

5   "quickly becoming a *significant threat* to caribou, both through direct harassment

6   and indirectly by potentially precluding caribou use of historic habitats and travel

7   corridors." (FWS AR, at 00057) (emphasis added).  According to Defendants'

8   own administrative record, not only does snowmobiling displace caribou to less

9   preferred habitat, but it also potentially increases predation rates by creating easier

10  access to caribou habitat for its natural predators.  (USFS AR D220, at 3-4).  These

11  effects are particularly worrisome considering the limited nutritional intake of

12  woodland caribou in the late winter.  (FWS AR, at 00018).  Plaintiffs' evidence

13  reinforces these findings.  The experts both decidedly conclude that the

14  implementation of the Forest Service's current plans will likely both "harm" and

15  "harass" the small remaining population of woodland caribou.  The study on

16  displacement of woodland caribou from winter habitat by snowmobiles found

17  "nearly complete displacement from an entire mountain block" that consisted of

18  high quality habitat due to intensive snowmobile activity.

19       The Court also finds particularly instructive the direct evidence of

20  harassment in 2004, an event admitted by Defendants at oral argument.  The Forest

21  Service employee's email shows that snowmobile activities directly affected the

22  selection of habitat and the movement of caribou in or near the IPNF in March

23  2004.  The Court is familiar with and takes judicial notice of the territory and the

24  amount and frequency of snowfall that occurs in and around the Idaho Panhandle

25  National Forest.  The fact that caribou have been spotted in proximity to

26  snowmobile tracks during aerial flights is significant—it is a large territory that

27  receives enormous and frequent amounts of snowfall.  The fact that snowmobile

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 18

interaction with and harassment of these animals has been observed even once indicates to the Court that snowmobiling within the caribou recovery area presents a definitive threat of future harm to the caribou.

Moreover, the Service's conclusion that the IPNF Forest Plan does not "jeopardize" the continued existence of woodland caribou in its 2001 Amended BiOp is conditioned on the USFS's undertaking the reasonable and prudent measures outlined in the Incidental Take Statement. The non-discretionary duty imposed as a condition to the Incidental Take Statement is the preparation and implementation of a comprehensive recreation management strategy. The USFS has not complied with this condition. Had Plaintiffs filed a motion to enjoin snowmobiling pending the Forest Service's compliance with this condition, the Court likely would have granted that motion considering its mandatory nature and the dependence of the FWS's "no jeopardy" finding on it. Defendant's withdrawal of the Incidental Take Statement and 2001 Amended IPNF BiOp, and the Forest Service's current reliance on its unilateral § 7(d) determination, does not resolve the issues identified in those documents. From this the Court infers that the USFS's failure to comply with that mandatory condition alone jeopardizes the continued existence of the woodland caribou.

The evidence of past takes and the likelihood of future harms cements the Court's conclusion that Plaintiffs have made the requisite showing. The evidence, viewed in its entirety, shows that a violation of § 7(a)(2)'s substantive requirement to insure an agency action does not jeopardize the woodland caribou's survival and that a violation of § 9's prohibition against "take" in the form of harassment and harm are likely in the future. Considering the precarious finger-hold the population of woodland caribou has in this country and the ESA's institutionalized caution mandate, the Court would be remiss to permit the continuation of an activity during the consultation period that could cause any harm to the few

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 19

1    animals that remain within the IPNF.  Accordingly, the Court grants Plaintiffs'
2    second motion for injunctive relief.

3    **IV.  Scope of Relief**

4    Pursuant to Federal Rule of Civil Procedure 65(d), the Court must tailor the
5    relief ordered.  Fed. R. Civ. P. 65(d) (stating the order "shall be specific in terms;
6    [and] shall describe in reasonable detail . . . the act or acts sought to be
7    restrained").  Plaintiffs request an order prohibiting any and all snowmobiling and
8    trail grooming throughout the caribou recovery area within the IPNF.  Both
9    Defendants and Intervenors pointed out at the hearing that this type of relief would
10    be over-protective.  The caribou recovery area consists of suitable caribou habitat
11    for all seasons.  Defendants and Intervenors assert an injunction, if ordered, should
12    be limited in scope to late winter caribou habitat.

13    In the absence of more specific information, the Court chooses to be over-
14    rather than under-protective, in accordance with the spirit of the ESA.  Therefore,
15    the Court prohibits all snowmobiling and snowmobile trail grooming within the
16    designated caribou recovery area inside the IPNF until the completion of formal
17    consultation.  The Court recognizes that the parties are more knowledgeable about
18    the snowmobiling areas and groomed trails that exist within the caribou recovery
19    area in the IPNF than is the Court.  The parties also are more familiar with the
20    locations of suitable habitat that could be impacted by these activities.  Therefore,
21    if the parties disagree with the scope of the present injunction, the Court invites
22    them to submit briefing on its proper scope.

23    JURISDICTION & STANDARD OF REVIEW: SUMMARY JUDGMENT

24    Citizens and citizen groups are authorized under the ESA to file suit "to
25    enjoin any person, including the United States . . . who is alleged to be in violation
26    of any provision of this chapter or regulations issued under the authority thereof."
27    16 U.S.C. § 1540(g)(1).  Federal district courts have jurisdiction to enforce "any

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 20

1   such provision or regulation." *Id.*

2       Partial summary judgment is appropriate if the "pleadings, depositions,

3   answers to interrogatories, and admissions on file, together with the affidavits, if

4   any, show that there is no genuine issue as to any material fact and that the moving

5   party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When

6   considering a motion for summary judgment, a court may neither weigh the

7   evidence nor assess credibility; instead, "the evidence of the non-movant is to be

8   believed, and all justifiable inferences are to be drawn in his favor." *Anderson v.*

9   *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

10      Agency decisions under the ESA are governed by the APA, which requires

11  an agency action to be upheld unless it is found to be "arbitrary, capricious, an

12  abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

13  706(2)(A); *Pacific Coast Fed'n of Fishermen's Ass'n v. NMFS*, 265 F.3d 1028,

14  1034 (9th Cir. 2001) ("*PCFFA*"). The biological opinion at issue here, including

15  the Incidental Take statement, and the CCSA, are final agency actions subject to

16  this standard. *PCFFA*, 265 F.3d at 1033-34 (biological opinions and

17  accompanying incidental take statements are "final agency actions); Ct. Rec. 65, at

18  16 (finding the CCSA is an "agency action" requiring consultation under the

19  ESA's § 7(a)(2)). Under the arbitrary and capricious standard, the Court must ask

20  "whether the agency considered the relevant factors and articulated a rational

21  connection between the facts found and the choice made." *PCFFA*, 265 F.3d at

22  1034 (internal quotation marks and citation omitted).

23              **DISCUSSION: MOTIONS FOR SUMMARY JUDGMENT**

24      Before the Court are Plaintiffs' Motion for Partial Summary Judgment (Ct.

25  Rec. 36) and Defendants' Cross-Motion for Partial Summary Judgment (Ct. Rec.

26  78). As outlined above, both Plaintiffs' and Defendants' motions focus on the

27  same four issues:

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 21

(1) The amended [IPNF BiOp] issued by defendants Susan Martin and U.S. Fish and Wildlife Service is arbitrary, capricious, an abuse of discretion, and/or contrary to law, pursuant to the ESA and the Administrative Procedure Act ("APA");

(2) The Incidental Take Statement within the IPNF BiOp is arbitrary, capricious, an abuse of discretion, and/or contrary to law, pursuant to the ESA and the APA;

(3) Defendants have further violated the ESA by not reinitiating consultation over the IPNF BiOP, after the U.S. Forest Service failed to comply with the non-discretionary Terms and Conditions within the Incidental Take Statement; and/or

(4) Defendants McNair and U.S. Forest Service have violated the ESA by failing to consult with U.S. Fish and Wildlife Service over their [CCSA] for snowmobile trail grooming on the IPNF, and by failing to ensure that the [CCSA] will not jeopardize the continued existence of the woodland caribou.

(Ct. Rec. 36, Pls.' Mot. Partial Summ. J., at 3).  Plaintiffs limit their request to the Idaho Panhandle National Forest ("IPNF").  They explain that even though the Complaint alleges similar challenges to the biological opinion for the Colville National Forest, Plaintiffs are presenting their challenges over the IPNF first in the interest of judicial economy.

Defendants raise a threshold question in their cross-motion.  They submit that, since Plaintiffs filed their motion for partial summary judgment, IPNF has reinitiated formal consultation with the Fish and Wildlife Service and withdrawn those portions of the 2001 Amended BiOp that relate to woodland caribou and winter recreation in the IPNF.  While consultation is pending, Federal Defendants maintain they will be implementing limitations in accordance with § 7(d) of the ESA.  These actions, according to Defendants, moot Plaintiffs' claims for summary judgment.  Plaintiffs respond that the case is not moot and they are entitled to declaratory relief to establish that Defendants violated the ESA and to prevent further violations.  Defendants concur that the *case* is not moot; instead, they assert that the *claims* raised in Plaintiffs' motion for partial summary judgment are moot by virtue of the reinitiation of consultation.

I.    **Section 7(a)(2) of the ESA**

To determine whether Plaintiffs' claims in their motion for partial summary

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 22

judgment are moot, some background discussion regarding the workings of the ESA is appropriate. Section 7(a)(2) of the ESA provides: "Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species . . . ." 16 U.S.C. § 1536(a)(2). "Jeopardize" means to "reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 40 C.F.R. § 402.02. This section therefore ensures the agency meets its substantive ESA duties by imposing a procedural consultation duty whenever a federal action may affect a listed species. *Nat'l Wildlife Fed'n v. NMFS*, 422 F.3d 782, 790 (9th Cir. 2005).

During the consultation process, the agency "evaluates the effects of the proposed action on the survival of [the] species and any potential destruction or adverse modification of critical habitat in a biological opinion, 16 U.S.C. § 1536(b), based on 'the best scientific and commercial data available,' *id.* at § 1536(a)(2)." *Nat'l Wildlife Fed'n*, 422 F.3d at 790. The biological opinion must include (1) a summary of the information upon which the information is based; (2) a discussion of the effects of the action on listed species or critical habitat; and (3) the agency's opinion on "whether the action is likely to jeopardize the continued existence of a listed species or result in the destruction or adverse modification of critical habitat . . . ." 50 C.F.R. § 402.14(h). If the biological opinion concludes that jeopardy is not likely and there will not be adverse modification of critical habitat, or if it concludes that there is a "reasonable and prudent alternative" to the agency action that avoids jeopardy and adverse modification and that the incidental taking of endangered or threatened species will not violate § 7(a)(2), the consulting agency, here FWS, can issue an "Incidental Take Statement" which, if followed, exempts the action agency, here USFS, from the prohibition on takings in § 9 of

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 23

the ESA. *Nat'l Wildlife Fed'n*, 422 F.3d at 790. The 2001 IPNF Amended BiOp and its Incidental Take Statement were the results of this process and form the basis of Plaintiffs' motion for partial summary judgment.

**II.    Mootness**

Article III limits federal courts' jurisdiction to "cases or controversies." *Doe v. Madison School Dist. No. 321*, 177 F.3d 789, 797 (9th Cir. 1999). A plaintiff must therefore maintain a live case throughout litigation to preserve federal jurisdiction. *Id.* "Federal courts lack jurisdiction to consider 'moot questions . . . or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). Put simply, a court cannot "take jurisdiction over a claim to which no effective relief can be granted." *Headwaters, Inc. v. BLM*, 893 F.2d 1012, 1015 (9th Cir. 1990). The party asserting mootness, here the Federal Defendants, bears the burden of establishing that there is no effective relief the Court can provide. This burden is a heavy one: "a case is not moot where *any* effective relief may be granted." *Forest Guardians*, 450 F.3d at 461 (emphasis in original).

Defendants assert Plaintiffs' claims are moot because they are based on the 2001 Amended BiOp. That opinion was withdrawn once the IPNF and the Service reinitiated consultation. Defendants rely heavily on a Tenth Circuit case for the proposition that Plaintiffs' claims are mooted by the reinitiation of consultation. In *Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727-29 (10th Cir. 1997) ("*SUWA*"), the Tenth Circuit dismissed claims for injunctive and declaratory relief, finding that the reinitiation of consultation rendered them moot. There, the plaintiff alleged that the Bureau of Land Management ("BLM") violated § 7 of the ESA by failing to consult with the FWS over a management plan for BLM land that was home to a listed species of plant life. *Id.* at 725. The management plan in

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 24

that case, similar to the forest plan here, required BLM to close certain access routes used by off-road vehicles but to leave open several others. *Id*. at 726. The plaintiff requested injunctive and declaratory relief, particularly in the form of a stay of the management plan pending consultation regarding the impact of off-road vehicle use on the listed plant on the open access routes. *Id*. The BLM initiated and completed consultation while the action was pending, and the district court ruled against the plaintiff on the merits and found the action mooted. *Id*. at 727. The Tenth Circuit affirmed. *Id*. at 729-30.

The Ninth Circuit has pointed out that the Tenth Circuit's holding in *SUWA* is limited, however. In *Forest Guardians*, the Ninth Circuit distinguished the facts in *SUWA*, noting how the Tenth Circuit "expressly narrowed its holding:"

> "This is not to say that a violation of section 7(a)(2) could always be cured by subsequent consultation, nor is this general approval for consultation after the fact. Instead, this merely recognizes that the changed circumstances of this particular case no longer present an opportunity for meaningful relief. . . . A declaratory judgment would serve no purpose in this case. This case does not involve a continuing violation or practice, and SUWA has not shown that the defendants are likely to violate section 7(a)(2) in the near future. A declaratory judgment would not affect the matter, and would be in the nature of an advisory opinion."

450 F.3d at 462 (quoting *SUWA*, 110 F.3d at 729-30). The Ninth Circuit held that the reasoning presented in *SUWA* would not apply to cases in which there is a continuing practice and/or to cases in which the practice of not complying with requirements[3] is likely to persist despite re-consultation. *Id*. The court explained that where "both injunctive and declaratory relief are sought but the request for an injunction is rendered moot during litigation, if a declaratory judgment would

_____

[3] In *Forest Guardians*, the Forest Service was required under a land management plan to monitor the utilization levels of several grazed pastures in an allotment on a yearly basis to maintain the FWS's "not likely to adversely affect" finding. 450 F.3d at 458-59.

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 25

1  nevertheless provide effective relief the action is not moot." *Id.*

2  Here, as in *Forest Guardians*, Plaintiffs allege Federal Defendants have not

3  complied with requirements set forth in the Incidental Take Statement.  Federal

4  Defendants have not developed or implemented a Recreation Strategy, which was a

5  mandatory condition to maintaining the FWS's no jeopardy finding.  Unlike *Forest*

6  *Guardians*, however, the Federal Defendants here are not arguing that the

7  condition they failed to satisfy is "unreasonable," nor are they arguing that they are

8  not required to develop and implement a strategy.  To the contrary, the Federal

9  Defendants assert they are currently developing a strategy in consultation with the

10  FWS.  Therefore, Defendants submit there is no continuing practice and non-

11  compliance is not likely to persist.

12  As mentioned above, Plaintiffs request four areas of relief in their motion for

13  partial summary judgment.  Plaintiffs' first two claims ask the Court to find the

14  2001 IPNF Amended BiOp and its Incidental Take Statement are arbitrary,

15  capricious, an abuse of discretion, and/or contrary to law.  Plaintiffs' third claim in

16  their motion for partial summary judgment specifically calls for reinitiation of

17  consultation.  Lastly, Plaintiffs claim Defendants violated the ESA by failing to

18  consult with the Fish and Wildlife Service over the CCSA and by failing to ensure

19  the CCSA will not jeopardize the continued existence of the woodland caribou.

20  Clearly Plaintiffs' third claim regarding reinitiation of consultation is now

21  moot.  Defendants have reinitiated consultation.  Plaintiffs' last claim also requests

22  consultation.  Plaintiffs ask the Court to order Defendants to consult over the

23  CCSA, and they assert that through this process of consultation Defendants will

24  ensure the CCSA will not jeopardize the continued existence of woodland caribou.

25  These two claims are now moot because there is no effective relief that can be

26  granted—Defendants are already engaged in consultation.

27  However, Plaintiffs' first two claims for relief depend entirely on the status

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 26

of the 2001 IPNF Amended BiOp.  If the BiOp is withdrawn and completely

inapplicable, Plaintiffs' first two claims for partial summary judgment are likewise

moot.  Conversely, if the BiOp remains even partially in force, the Court may be

able to fashion some form of effective relief.

Defendants assert that, with the reinitiation of consultation, the 2001 IPNF

Amended BiOp is withdrawn and no longer considered valid.  Plaintiffs in their

response allege two defenses to Defendants' "withdrawal" of the IPNF BiOp: (1)

Defendants are still in violation of the ESA by relying on a biological opinion

almost identical to the IPNF BiOp for the Colville National Forest; and (2)

Defendants are continuing to authorize snowmobile activities in spite of the

withdrawal of the 2001 Amended BiOp.  Plaintiffs' first argument relating to the

Colville BiOp is not before the Court at this time.  Plaintiffs expressly limited their

motion for partial summary judgment to the IPNF and stated in their motion that

they would address their claims related to the Colville National Forest separately.

However, Plaintiffs' second argument and some case law does support a

finding that the 2001 BiOp should still be considered.  Several district courts have

found that a biological opinion, upon reinitiation of consultation, remains

justiciable when there is a possibility of continuing violations and/or the plaintiffs

are challenging the process behind the biological opinion.  *See Greenpeace v. Nat'l*

*Marine Fisheries Serv.*, 80 F. Supp. 2d 1137, 1152 (W.D. Wash. 2000) (finding

that "until such time as a comprehensive opinion is in place, this Court retains the

authority to determine whether any continuing action violates the ESA and can

provide effective relief by enjoining it or remedying its effects"); *Greenpeace*

*Found. v. Mineta*, 122 F. Supp. 2d 1123, 1128 (D. Haw. 2000) (holding "so long as

the current biological opinions governing the Crustacean FMP stand in place, a

challenge to the adequacy of those opinions is justiciable" because the plaintiffs

challenged the adequacy of prior consultation).  These opinions seem to address

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 27

whether an entire case is moot, however, not whether certain claims related to the withdrawn biological opinions are moot.

Other district courts have reached the contrary conclusion and found that a withdrawn biological opinion does render claims moot, particularly after considering the effect of § 7(d) and/or the doctrine of prudential mootness.  *See Southwest Center for Biological Diversity v. USFS* ("*SCBD*"), 82 F. Supp. 2d 1070, 1078-80 (D. Ariz. 2000) (finding the plaintiffs' § 7(a)(2) claims were moot and that the action centered now around the defendants' compliance with § 7(d)); *Or. Natural Res. Council v. Keys*, 2004 WL 1048168, at *10 (D. Or. 2004) (applying prudential mootness to dismiss).

As in *SCBD*, Plaintiffs here essentially are asking the Court to issue a declaratory judgment stating that Federal Defendants' 2001 IPNF Amended BiOp was in violation of § 7(a)(2) of the ESA prior to the reinitiation of consultation. Because of the limited nature of Plaintiffs' claims and requests for relief in their motion for partial summary judgment and the application of § 7(d) to the Forest Service's future actions within the IPNF, the declaratory relief requested would no longer affect the matter in issue in this case.  The Court finds Plaintiffs' motion is moot and elects not to issue an advisory opinion.[4]

Plaintiffs put forth two other arguments as to the continuing viability of their motion.  They argue the Court should not dismiss on the basis of mootness because Defendants voluntarily ceased their illegal activities, and they assert the Court may still grant relief in the form of a declaratory judgment.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice . . . . [I]f it did, the courts would be compelled to leave [t]he defendant

---

[4]  Because it has found Plaintiffs' claims are moot, the Court declines to address Defendants' alternative theory for dismissal based on prudential mootness.

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 28

1    . . . free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S.

2    167, 189 (2000) (internal quotations and citations omitted). "[A] defendant

3    claiming that its voluntary compliance moots a case bears the formidable burden of

4    showing that it is absolutely clear the allegedly wrongful behavior could not

5    reasonably be expected to recur." *Id.* at 190. It is clear here that Federal

6    Defendants do not intend to rely on the challenged 2001 BiOp after publicly

7    announcing that it is no longer valid. *See Forest Guardians v. USFS*, 329 F.3d

8    1089, 1095 (9th Cir. 2003). Therefore, the Court may reasonably conclude that it

9    is "absolutely clear" the Federal Defendants will not in the future rely on the 2001

10   IPNF Amended BiOp. The voluntary cessation exception to the mootness

11   jurisdictional bar does not apply here. *See id.*

12          As to Plaintiffs' declaratory relief argument, many cases cited *supra* support

13   the conclusion that the Court must consider requests for declaratory relief separate

14   from the availability of injunctive relief. *E.g.*, *Forest Guardians v. Johanns*, 450

15   F.3d at 462. However, "[d]eclaratory relief claims are not immune from mootness

16   considerations." *Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1195 (9th

17   Cir. 2000). Plaintiffs state they seek a declaratory judgment to ensure that the

18   USFS does not continue to violate the ESA by jeopardizing caribou in its ongoing

19   authorization of snowmobiling and to ensure that the new biological opinion does

20   not have the same flaws as the 2001 IPNF Amended BiOp. However, issuing a

21   declaratory judgment about the adequacy of a withdrawn biological opinion would

22   have no such effect and would be in the nature of an advisory opinion. Plaintiffs

23   framed their motion for partial summary judgment narrowly, and the future

24   implementation of policies against which they seek a declaration have no relation

25   to the withdrawn 2001 IPNF Amended BiOp. *See Headwaters, Inc.*, 893 F.2d at

26   1015.

27          Although there are certainly many issues and claims remaining in this case

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 29

and much potential for relief, Defendants' reinitiation of consultation has rendered the claims set forth in Plaintiffs' motion for partial summary judgment moot. There is no effective relief the Court can grant regarding these claims, so the Court denies Plaintiffs' motion and grants Defendants' cross-motion for partial summary judgment.  The Court does not revoke its prior Order granting Plaintiffs' motion for a preliminary injunction, however, because that order by its own terms extends until the *completion* of § 7(a)(2) consultation.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiffs' Motion for Partial Summary Judgment (Ct. Rec. 36) is **DENIED**.

2.  Defendants' Cross-Motion for Partial Summary Judgment (Ct. Rec. 78) is **GRANTED**.

3.  Plaintiffs' Second Motion for Injunctive Relief (Ct. Rec. 105) is **GRANTED**.

4.  Defendants are **ENJOINED** from authorizing snowmobiling and snowmobile trail grooming in the designated caribou recovery area within the IPNF until they have adequately completed consultation over the effects of these activities on woodland caribou.

5.  The parties shall in good faith confer regarding the scope of this injunction and, if necessary, submit a proposed order that narrows its scope.  If the parties cannot agree on the scope of the injunction, they shall submit separate proposed orders accompanied by memoranda.  The parties shall file these documents with the Court on or before **ten (10) days** after the entry of this Order.

6.  A hearing is **set** for **October 6, 2006, at 8:00 a.m.**  The parties shall present and, if necessary, argue for the application of their proposed order(s) for injunctive relief at that time.  The parties may appear telephonically by calling the Court's conference line ((509) 458-6380) at the scheduled time.

1    **IT IS SO ORDERED.**  The District Court Executive is hereby directed to

2  enter this Order and furnish copies to counsel.

3    **DATED** this 22nd day of September, 2006.

4

5                         *s/ Robert H. Whaley*

6                    ROBERT H. WHALEY
                  Chief United States District Judge

7

8

9

10  Q:\CIVIL\2005\Defenders of Wildlife\SJ&PI3.ord.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING DEFENDANTS' CROSS-MOTION AND
PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF * 31