FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 13, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEFENDERS OF WILDLIFE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SUSAN Martin, et al., <br><br> Defendants, <br><br> And <br><br> IDAHO STATE SNOWMOBILE ASSOCIATION, et al., <br><br> Intervenor-Defendants. | No. 2:05-cv-00248-RHW <br><br> **ORDER DENYING MOTION TO DISSOLVE AMENDED PERMANENT INJUNCTION** <br><br> (ECF No. 216) |

Before the Court is Intervenor-Defendant Idaho State Snowmobile Association's (ISSA) motion to dissolve the amended permanent injunction. ECF No. 216. The Court heard oral argument via video conference on November 30, 2021. Norman Semanko appeared on behalf of ISSA, Hannah Clements appeared on behalf of the Defenders of Wildlife, and Taylor Mayhall appeared on behalf the United States Forest Service ("Forest Service" or "USFS") and the United States

**ORDER DENYING MOTION TO DISSOLVE
AMENDED PERMANENT INJUNCTION ~ 1**

Fish and Wildlife Service (FWS) (collectively the "Federal Defendants"). The Court has reviewed the briefing, supporting documentation, and the filings in this case and is fully informed. Because ISSA has not met its burden to demonstrate that the injunction should be dissolved, the motion is DENIED.

## I. BACKGROUND

In the permanent injunction order, this Court prohibited snowmobile use in certain areas of the Idaho Panhandle National Forest (IPNF) designated as habitat for the endangered woodland caribou. *See* ECF Nos. 176, 179, 180-3, 181. In the underlying action, the Defenders of Wildlife, a non-profit conservation organization, brought a lawsuit against the Federal Defendants seeking an injunction that would ban snowmobiling[1] in designated areas of the IPNF. *See* ECF Nos. 1, 35. Plaintiffs argued that such activity negatively impacted the habitat of the woodland caribou, an endangered species under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531–44. *See* ECF Nos. 1, 35; 50 C.F.R. § 17.11(h) (identifying woodland caribou (*Rangifer tarandus caribou*) as endangered). ISSA moved to intervene on behalf of the Defendants and the intervention was allowed. ECF No. 34. This Court granted Plaintiff's motion for a preliminary injunction that enjoined the Federal Defendants from allowing snowmobiling within the "Caribou Recovery Area" inside the INPF (hereinafter the "closure areas"). ECF No. 139, at

---

[1] For the purposes of this order, the Court uses the terms "snowmobiling," "recreational snowmobiling," and "over-snow vehicle (OSV) use" interchangeably.

**ORDER DENYING MOTION TO DISSOLVE
AMENDED PERMANENT INJUNCTION ~ 2**

2. After a bench trial, this Court permanently enjoined recreational snowmobile use in the specified areas because the Court determined that this activity was harmful to the endangered woodland caribou. ECF No. 176, at 14–15; ECF No. 181. At the time the Court entered findings of fact and conclusions of law in February 2007, the Court determined that the remaining population of the Selkirk Mountains woodland caribou was between 35 and 45 animals, with most of the population located in southern British Columbia, Canada. ECF No. 176, at 3. The Court held that "Plaintiffs have shown that continued snowmobiling within the area subject to the current injunction as well as the travel corridor prevents, or at the very least, retards, recovery of the woodland caribou within the United States." *Id.* at 14. The Court found that snowmobiling degrades the late winter habitat of the caribou and significantly impairs the feeding and breeding habits of the species and by allowing snowmobile use, the Federal Defendants were in violation of Section 9 of the ESA, which makes it unlawful to "take" any species listed as endangered. *Id.* at 13–15; 16 U.S.C. § 1538(a)(1)(B).[2]

      Pursuant to the Court's permanent injunction order, the Forest Service entered a special closure order that banned snowmobiling in the caribou recovery

---

[2] "Take" is defined broadly under the statute to mean "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." *Id.* § 1532(19).

**ORDER DENYING MOTION TO DISSOLVE**
**AMENDED PERMANENT INJUNCTION ~ 3**

areas of the IPNF. ECF No. 225-2, Exhibit 1 (USFS Order No. F-07-002 (March 12, 2007) & USFS Order No. F-06-001 (Nov. 21, 2006)).

The permanent injunction order states that the ban on OSV-use will remain in effect until the Forest Service, after conducting ESA-mandated consultation with the FWS, adopts a winter recreation strategy for the IPNF (hereinafter the "winter travel plan"). ECF No. 179 ¶ 3. Nearing almost 15 years since the Court's permanent injunction order, the Forest Service has still not completed the winter travel plan. ECF No. 225-1 ¶ 4 (Berner Decl.). The Forest Service attributes the delays to litigation and regulatory processes, including protection of the ESA-listed grizzly bear. *Id.* Pursuant to the August 2020 Revised Forest Plan Biological Opinion, the deadline to complete the winter travel plan is by the end of 2023. *Id.*; ECF No. 223-1, at 18 (FWS Biological Op. (Aug. 13, 2020)) ("[T]he IPNF expects to complete a winter travel plan by the end of 2023.").

**A. ISSA's motion to dissolve**

In the present motion, ISSA seeks to dissolve the permanent injunction contending that the injunction is no longer necessary because there are no known instances of woodland caribou in the designated area. ECF No. 216, at 4. Relying on the declaration of fish and wildlife expert Mike Schlegel, ISSA notes that no woodland caribou have been documented in the United States in annual censuses since 2012. ECF No. 216, at 4. Radio tracking data indicated that one collared bull

entered Washington state for about 10 days in late 2014, and in 2019, one remaining cow was captured near Creston, British Columbia and relocated to a maternity pen near Revelstoke, British Columbia. ECF No. 216-3, Exhibit A at 24.

ISSA contends that the absence of any individual members constitutes a change in circumstances that warrants lifting the injunction. ECF No. 216, at 6–7. Namely, ISSA argues that this Court should dissolve the injunction pursuant to its authority under Federal Rule of Civil Procedure 60(b) because enforcing the injunction prospectively is no longer equitable. *Id.* at 7.

The Federal Defendants and Defenders of Wildlife do not dispute that individual caribou have not been identified in the closure areas in recent years. ECF No. 225, at 2 (acknowledging that presently there are no known woodland caribou residing in the closure areas); *see* ECF No. 222, 6–9 (not disputing that no woodland caribou have been identified recently in the closure areas). Instead, the Federal Defendants and the Defenders of Wildlife argue that ISSA has not demonstrated a change in circumstances that render compliance with the injunction onerous or unworkable, and they contend that ESA consultation is still legally required before areas can be reopened to OSV use.

II.     **LEGAL STANDARD**

A district court may relieve a party from a final judgment when "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The

**ORDER DENYING MOTION TO DISSOLVE
AMENDED PERMANENT INJUNCTION ~ 5**

party seeking relief bears the burden to establish that the changed circumstances warrant relief. *Horne v. Flores*, 557 U.S. 433, 447 (2009).

The Ninth Circuit has adopted the two-prong standard established by the Supreme Court in *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384–85 (1992), to determine if relief under Rule 60(b)(5) is warranted. *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999); *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005). First, the moving party must show a significant change in factual conditions or in the law warranting modification of the order. *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021). Next, if the movant cites significantly changed factual conditions, the party must then show that the changed conditions make compliance with the court's order "more onerous, unworkable, or detrimental to the public interest." *Asarco*, 430 F.3d at 979 (internal quotation marks omitted); *see also America Unites for Kids*, 985 F.3d at 1097–98.

### III.  DISCUSSION

#### A. Standing

An intervenor's right to continue a lawsuit absent the non-intervening party is contingent upon a showing by the intervenor that it fulfills the requirements of Article III. *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 963 (9th Cir. 2015); *Diamond v. Charles*, 476 U.S. 54, 68 (1986). Here, the Federal Defendants do not join ISSA's motion to dissolve the injunction. ECF No. 225, at

2. The Defenders of Wildlife argues that ISSA cannot bring the present motion to dissolve the injunction because ISSA lacks standing. ECF No. 222, at 2–5.

To establish Article III standing, a party must demonstrate injury in fact, causation, and redressability. *Organized Vill. of Kake*, 795 F.3d at 963. An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and the lawsuit's resolution does not require the participation of the individual members. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). ISSA is a statewide organization representing various snowmobile clubs throughout Idaho. ECF No. 216-2 ¶ 3 (Mitchell Decl.). Its members snowmobile in the IPNF and wish to snowmobile in the closed areas. *Id.* ¶ 5; ECF No. 216-1 ¶¶ 2–8 (Finney Decl.). The Court finds that the latter two elements are met: the interests at stake are germane to the organization's purpose of promoting access to Idaho snowmobiling, and the lawsuit's resolution does not require the participation of the individual ISSA members. Applying the Article III standing analysis to follow, the Court also finds that the individual members would have standing to sue in their own right. Thus, ISSA has met the requirements of associational standing.

ISSA claims it experienced harm to recreational value by not being able to snowmobile in the closure areas. ECF No. 219, at 6. The Defenders of Wildlife concedes that ISSA has suffered an injury in fact, ECF No. 222, at 3, and the Court

accepts this concession. Next, ISSA meets the causation prong of standing because, but for the permanent injunction, its members would be able to snowmobile in the desired areas. Even though the USFS closures independently serve to prevent ISSA members from snowmobiling in the designated areas, the USFS initially implemented the closures based on this Court's permanent injunction. ECF No. 225, at 5 (Federal Defendants stating in response brief: "Pursuant to this Court's 2007 entry of a permanent injunction against snowmobiling . . . the Forest Service issued a closure order on March 12, 2007). The Court finds that ISSA's alleged harm is traceable to the permanent injunction.

Lastly, the Defenders of Wildlife contends that the harm suffered by ISSA will not be redressed by dissolving the injunction because the area is closed by separate orders of the USFS. ECF No. 222 at 3–4. It contends that if the injunction is dissolved it is merely speculative as to whether snowmobiling would be allowed. To demonstrate redressability, the plaintiff must show that it is "likely, as opposed to merely speculative, that the injury be redressed by a favorable decision." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The redressability prong does not demand that the court-ordered relief completely redress all injury. *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982). Although the relief ISSA seeks will ultimately depend on whether the USFS amends or rescinds the closure orders, ISSA cannot obtain such relief if the present injunction remains in place. If this Court were to dissolve the injunction, the

USFS would be able to consider removing the closure orders. Thus, granting ISSA the relief requested would be a form of partial relief for ISSA. The Court finds that the redressability prong has been met.

For these reasons, the Court finds that ISSA has demonstrated Article III standing to bring the present motion.

**B. Motion to Dissolve**

    **1. The closure areas are still critical habitat of the woodland caribou.**

The Court finds that the closure areas subject to this Court's permanent injunction are still critical habitat for the caribou.

To show that the injunction should be dissolved, ISSA must first demonstrate a significant change in factual conditions or in the law warranting modification of the order. *America Unites for Kids*, 985 F.3d at 1097. ISSA contends that when the injunction was issued, some caribou lived in the closure areas and now they have all since died or been relocated. ECF No. 216, at 8. Indeed, the record demonstrates that the population of woodland caribou have regrettably declined, and that since 2012, there have been few, if any, crossings of caribou from Canada into the United States. *See* ECF No. 216-3, Exhibit A at 24 (identifying only one collared bull entering into Washington state in 2014 for 10 days). Thus, ISSA has shown a change in factual

circumstances.[3] Next, the Court must determine if these changes are so significant to warrant lifting the injunction.

ISSA must demonstrate that the change in circumstances makes compliance with the injunction more onerous, unworkable, or detrimental to the public interest. *Asarco*, 430 F.3d at 979.

The Supreme Court has held that an injunction is detrimental to the public interest under Rule 60(b)(5) when enforcement of the original order is no longer supported by an ongoing violation of federal law. *Horne v. Flores*, 557 U.S. 433, 454 (2009). The ESA requires federal agencies to ensure that their actions do not result in the "destruction or adverse modification of the habitat" of an endangered

---

[3] ISSA seemingly asserts that the woodland caribou are no longer listed as an endangered species because they have been extirpated. ECF No. 216, at 3 ("In 2019, the U.S. Fish and Wildlife Service issue[d] a Final Rule, determining that the southern Selkirk Mountains population of woodland caribou could not be independently listed as endangered under the ESA . . . ."). To the contrary, the FWS Final Rule reaffirms the designation of southern mountain caribou's habitat of approximately 30,010 acres located in northern Idaho and northeastern Washington. Endangered and Threatened Wildlife; Endangered Species Status of Southern Mountain Caribou Distinct Population [hereinafter "Final Rule"], 84 Fed. Reg. 52598-01, 52598 (Oct. 2, 2019). Although the subspecies was previously listed as the southern Selkirk Mountains population of woodland caribou, the final rule explains that this previous listing failed to consider the "Southern Selkirk caribou's" significance relative to the appropriate taxon. *Id.* In other words, the appropriate distinct population segment (DPS) analysis should have been conducted relative to the subspecies woodland caribou (*Rangifer tarandus caribou*) instead of the mountain caribou metapopulation. *Id.* at 52599, 52601 ("[W]e now consider the southern Selkirk Mountains population of woodland caribou part of the larger southern mountain caribou population.").

**ORDER DENYING MOTION TO DISSOLVE
AMENDED PERMANENT INJUNCTION** ~  10

1  species. 16 U.S.C. § 1536(a)(2). The same provision also requires federal agencies
2  to ensure their actions do not "jeopardize the continued existence" of a listed
3  species; and this applies to actions that would "reduce appreciably the likelihood of
4  both the survival and *recovery*" of the species. *Id.*; 50 C.F.R. § 402.02 (emphasis
5  added); *see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917,
6  931–32 (9th Cir. 2008) (concluding jeopardy provision requires the agency to
7  consider both recovery and survival impacts). The Ninth Circuit has held that the
8  language, history, and structure of the ESA demonstrate a strong public interest in
9  favor of protecting endangered species. *Nat'l Wildlife Fed'n v. Burlington N. R.R.*,
10  23 F.3d 1508, 1511 (9th Cir. 1994).

11  ISSA argues that because all woodland caribou have died in the area or have
12  been relocated, permitting OSV-use would no longer violate the ESA. The Federal
13  Defendants counter that a transient caribou could still pass through the area and the
14  area is still designated as critical habitat. ECF No. 225, at 5; Recovery Outline
15  Southern Mountain Caribou Distinct Population Segment of Woodland Caribou
16  [hereinafter "Recovery Outline"], at 8, 15, available at
17  https://ecos.fws.gov/docs/recovery_plan/Southern_Mountain_Caribou_Recovery_O
18  utline_Signed_20191127.pdf (last visited Dec. 6, 2021).

19  In October 2019, the FWS reiterated the endangered listing of the woodland
20  caribou and identified the areas in question as critical habitat. Final Rule, 84 Fed.
21  Reg. at 52598.

**ORDER DENYING MOTION TO DISSOLVE
AMENDED PERMANENT INJUNCTION** ~  11

> We have determined that the approximately 30,010 acres (12,145 hectares) designated as critical habitat on November 28, 2012, for the southern Selkirk Mountains population of woodland caribou is applicable to the U.S. portion of the endangered southern mountain caribou DPS, and as such, *reaffirm the existing critical habitat of the DPS*.

*Id.* (emphasis added). This finding by the FWS makes clear that the closure areas are still considered critical habitat of the endangered woodland caribou.

Furthermore, the FWS Recovery Outline identifies two ways in which the woodland caribou may return to the presently unoccupied area in the United States: (1) if a transient individual crosses the international border; or (2) there is a management decision to reintroduce caribou back into the southern Selkirk Mountains. Recovery Outline, at 15. By granting ISSA's requested relief to lift the injunction, the Court would prevent either of these opportunities of future recovery of the species.

Because the area in question is still critical habitat of the woodland caribou, ESA protection is still justified. Allowing OSV-use would run afoul of the ESA's prohibition of agency action that results in the destruction or modification of the species' habitat. *See* 16 U.S.C. § 1536(a)(2). It would also "reduce appreciably the likelihood of . . . recovery" of the caribou. 50 C.F.R. § 402.02.

When considering the strong public interest in protecting endangered species, *see National Wildlife Federation*, 23 F.3d at 1511, ISSA has failed to show that allowing the permanent injunction to remain would be detrimental to the public

**ORDER DENYING MOTION TO DISSOLVE
AMENDED PERMANENT INJUNCTION ~ 12**

interest. Similarly, ISSA has failed to show that compliance with the injunction is more onerous or unworkable. Relief under Rule 60(b)(5) is warranted when the prospective application of the order is inequitable, not when "it is no longer convenient to live with the terms" of the order. *Rufo*, 502 U.S. at 383. ISSA has not met this burden, especially in light of the fact that it is not the party enjoined by the permanent injunction.

### 2. ESA-consultation as contemplated in the permanent injunction is still required.

The Defenders of Wildlife argues that the USFS must still fulfill its consultation obligation under the ESA prior to reauthorizing snowmobiling in the closure areas. ECF No. 222, at 6. The Court agrees.

The purpose of the consultation process is for the USFS to comply with its duty to avoid jeopardizing the survival or recovery of the southern mountain caribou. 16 U.S.C. § 1536(a)(2). As stated above, the closure areas are still critical habitat for the woodland caribou, and accordingly, the ESA requires the necessary consultation.

This Court is troubled that the winter travel management plan contemplated in the 2007 permanent injunction order has not been completed after 14 years and is still two years away from completion. Nonetheless, the law mandates the consultation process, and a deadline is not prescribed by the ESA. *See id.*

**ORDER DENYING MOTION TO DISSOLVE
AMENDED PERMANENT INJUNCTION ~ 13**

## IV.  CONCLUSION

For the reasons stated above, ISSA's motion to dissolve the permanent injunction is denied.

Accordingly, **IT IS HEREBY ORDERED:**

1. Intervenor-Defendant's Motion to Dissolve the Amended Permanent Injunction, **ECF No. 216**, is **DENIED**.

**IT IS SO ORDERED.** The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** this December 13, 2021.

s/Robert H. Whaley
ROBERT H. WHALEY
Senior United States District Judge
